# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
CASCINA CA DE LUPIS,            )
                                   )
        Plaintiff,           )
                                   )
        v.                  )       Civil Action No. 07-01372 (RBW)
                                   )
CORRADO BONINO, ET AL.,       )
                                   )
        Defendants.      )
                                   )
_____)

## Memorandum Opinion

The plaintiff, Cascina Ca de Lupis, S.r.l. ("Cascina"), has filed this lawsuit accusing

defendants Calita Corporation ("Calita"), and Roberto Donna ("Donna") of Fraud, Conversion,

Conspiracy, and Unjust Enrichment.[1] The plaintiff seeks damages in an amount equal to the full

value of the wines that it exported to former defendant Corrado Bonino ("Bonino"), and for

which it did not receive payment. In addition, the plaintiff seeks punitive damages, pre-and post-

judgment interest, costs, and attorney fees. Finally, the plaintiff seeks judicial intervention to

compel the defendants to provide an accurate accounting of their records so that the plaintiff may

review what wines the defendants obtained from the plaintiff, what wines were sold to third

parties, and the funds acquired from those sales. Currently before the Court is defendant

Donna's motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and his

---

[1] Originally, the plaintiff also named the following parties as defendants: Corrado Bonino ("Bonino"), Ena Rita, and Vini, Inc ("Vini"). However, on November 7, 2008, the plaintiff amended its complaint (for the second time), dismissing Ena Rita and Vini from the lawsuit. Approximately three months after the Second Amended Complaint was filed, Bonino was also dismissed by the plaintiff as a defendant to this lawsuit. Despite these dismissals, the plaintiff continues to rest its case on its Second Amended Complaint, which names Bonino as one the defendants. Therefore, the Court notes that whenever the singular term defendant is used throughout this Memorandum Opinion, reference is being made only to Roberto Donna.

accompanying Memorandum of Law In Support of Defendant Roberto Donna's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (Def.'s Mem.).[2] The motion is opposed by the plaintiff. After carefully considering the parties' submissions, the Court concludes that it must deny in part and grant in part the defendant's motion to dismiss.

## I. Background

The following facts are alleged in the plaintiff's Second Amended Complaint ("Am. Compl."). From September 2005 through June 2006, the plaintiff, an Italian company that exports high quality Italian wines to the District of Columbia, employed Corrado Bonino to assist the plaintiff in the importation and sale of its wines to restaurants in the District of Columbia and the surrounding area. Am. Compl. ¶¶ 1, 10, 12. During Bonino's employment, he contracted with Vini, Inc ("Vini"), a licensed wine importer, to enable the plaintiff's wines to be lawfully imported into the United States. Id. ¶ 14. The plaintiff exported wines valued at more than $600,000 to Bonino, and Bonino, through the Calita Corporation, a corporation organized and wholly owned by Bonino, then sold and distributed the wines to various purchasers in the United States. Id. ¶¶ 1, 5, 10, 12. Importantly, most of the wines were purportedly sold and delivered to the Galileo restaurant, a District of Columbia establishment owned and operated by defendant Donna. Id. ¶¶ 6, 19.

Sometime on or before December 31, 2005, without the plaintiff's knowledge or authorization, Bonino and Donna entered into an agreement which allowed Donna to pay Bonino less than the amount due for the purchase of the plaintiff's wines, in return for Bonino

[2] The following papers have also been submitted to the Court in connection with this motion: (1) Plaintiff's Response to Defendant Roberto Donna's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)6 ("Pl.'s Opp'n") and (2) Reply Memorandum to "Plaintiff's Response to Defendant Roberto Donna's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)" ("Def.'s Reply").

continuing to supply the plaintiff's wines to Donna.  Id. ¶¶ 1, 22, 36.  Donna would then sell these wines for a profit at both Galileo and a second restaurant he owned, Trattoria Beppo ("Trattoria").  Id.  ¶¶ 22, 36.  Furthermore, Bonino allegedly received an ownership interest in Trattoria.  Id. ¶ 36.  Between December 2005 and August 2006, Vini and Bonino provided in excess of $450,000 of the plaintiff's wines to Donna for his use at Galileo.  Id. ¶ 19.  Donna, aware that the proceeds from the sale of the wines would not be transmitted to the plaintiff, issued a series of checks payable to cash to Bonino and the Calita Corporation.  Id. ¶¶ 5, 25, 27, 42, 43, 46.  The checks issued by Donna to Bonino and Calita totaled $257,900, which was allegedly substantially less than the value of the wines supplied by the plaintiff to Bonino.  Id. ¶¶ 26, 42, 46.

Additionally, the plaintiff alleges that between September 2005 and August 2006, Bonino directed Vini to pay him, through Calita, $57,000 from the sale of the wines , which the plaintiff should have received.  Id. ¶ 28.  Bonino represented to Vini that he was forwarding these payments to the plaintiff, when in fact the payments were retained by Bonino.  Id. ¶¶ 29, 30.  On September 27, 2006, upon learning of Bonino's actions, the plaintiff fired Bonino as its consultant and subsequently filed this lawsuit.  Id. ¶ 32.

At the time of filing this complaint, the plaintiff alleged that it had been paid only $185,849 for the wines that were exported to the United States, leaving an outstanding balance of $415,666.80.  Id. ¶ 11.

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure "12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim" upon which relief may be granted. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which accomplishes the duel objectives of "giv[ing] the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, [the] plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." Hinson ex rel N.H. v. Merritt Educational Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Or, as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). And, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Moreover, under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true [and] must grant [the] plaintiff the benefit of all reasonable inferences [that can be derived] from the facts alleged." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citation omitted). Finally, in resolving a

Rule 12(b)(6) motion, the Court may consider only the factual allegations set forth in the complaint, any documents attached as exhibits with the complaint (or incorporated into the complaint), and matters subject to judicial notice. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The Court's focus is therefore restricted to the facts as alleged by the plaintiff[], which must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Analysis

As an initial matter, defendant Donna argues that because the plaintiff fails to allege that "Donna in his personal capacity, did, or could have, directly contracted with [the p]laintiff for the importation of the wine[s]," the plaintiff is unable to support any of his claims for relief against Donna, Def.'s Mem. at 6, and all claims against him must be dismissed, Id. at 5. Specifically, the defendant states that because he is not licensed to import wine as required by D.C. Code § 25-772(a) (2001), he "could not have lawfully purchased and resold the wine[s] in question[, and instead posits that t]he wine[s] could only have been lawfully purchased and resold by SER Corporation," which was doing business as Galileo, or the wine importer, Vini, Inc. Id. at 7. Consequently, because SER Corporation and Vini are not parties to this action and the defendant Donna "could not incur any legal obligation or duty to pay for the wine[s] [in his personal capacity]," defendant Donna argues that the plaintiff has failed to satisfy the requirements of Rule 12(b)(6). Id. at 7. The Court finds the defendant's arguments unpersuasive.

The District of Columbia Circuit held that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the "plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Accordingly, a court will construe a complaint "liberally in the plaintiff['s] favor, and . . . grant [the] plaintiff[] the benefit of all inferences that can be derived from the facts alleged". Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal citations omitted).

Here, the claims being asserted by the plaintiff do not question the propriety of the importation of the wines, but instead focus upon the circumstances under which the wines were sold after its importation. Am. Compl. ¶¶ 22, 36, 60, 66, 72. Therefore, defendant Donna's general challenge to the complaint is inapplicable to the present circumstances because his D.C. Code § 25-772(a) challenge has no bearing on whether he is liable based on the claims asserted by the plaintiff, and so long as the plaintiff's complaint alleges facts which would entitle him to relief, the defendant's motion to dismiss must be denied. Accordingly, the Court will proceed to examine whether the plaintiff has met its burden under each count asserted in its Second Amended Complaint.

A.    The Plaintiff's Fraud Claim

The defendant argues that the plaintiff "fails to plead with sufficient particularity all the required elements for a claim for fraud." Def.'s Mem. at 8. In support of this position, the defendant posits that "the Second Amended Complaint fails to sufficiently allege that [the defendant's] allegedly false representation [to the plaintiff that all of the wines were exclusively being used by him at Galileo] was given with an intent to deceive, concerned a material fact, and that [the plaintiff] took action in reliance thereupon." Id. Notably, the defendant fails to address, in both his motion to dismiss and his reply to the plaintiff's opposition, the plaintiff's claim

regarding Bonino's false representations to the plaintiff that "all monies obtained for the sale of Cascina wine[s] in the United States would be and were being forwarded to Cascina," Am. Compl. ¶ 20, a statement Donna allegedly knew was false. Id. ¶ 42.

The plaintiff counters that it has satisfied the pleading requirements by adequately identifying the alleged perpetrator of the fraud, when the fraudulent statements were made, the nature of the statements, and what injury the plaintiff sustained as a result of the statements. Plaintiff's Response to Defendant Roberto Donna's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)6 ("Pl.'s Opp'n") at 3.[3] The plaintiff asserts that the fraud claim against Donna stems from his role in the conspiracy with Bonino to defraud the plaintiff, thus, rendering Donna liable for Bonino's fraudulent statements and actions. Id. As additional support for its fraud claim, the plaintiff alleges that Bonino is a long time friend and confidant of Donna, Am. Compl. ¶ 7, Bonino and Donna allegedly have a longstanding business relationship with each other "in conjunction" with both Galileo and Trattoria, and "Calita's principal place of business is listed as Galileo Restaurant." Id. Therefore, the plaintiff argues that "liability for fraudulent statements made by Bonino can be imposed on [the defendant]." Pl.'s Opp'n at 4.

The defendant responds that the plaintiff is seeking to solve the defects in his fraud claim by improperly interweaving it with its conspiracy claim. Reply Memorandum to "Plaintiff's Response to defendant Roberto Donna's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)[(6)]" (Def.'s Reply) at 2-3. The defendant also asserts that the plaintiff's arguments are insufficiently supported and inaccurate, which he contends further "highlights the

_____

[3] The Court notes that the plaintiff failed to number the pages of his opposition, therefore, the Court has taken the liberty of assigning page numbers to it based on the order in which they were submitted to the Court.

deficiencies in [the plaintiff's] Second Amended Complaint." Id. For the following reasons, the Court disagrees with the defendant.

To prevail on a claim of fraud, the plaintiff must establish that there was "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." Pearson v. Chung, 961 A.2d 1067, 1074 (D.C. 2008) (internal quotation marks and citation omitted). Additionally, "the plaintiff must also have suffered some injury as a consequence of his reliance on the misrepresentation." Chedick v. Nash, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (internal citation omitted). "A false representation is 'an assertion not in accord with the facts[,' including t]he concealment of a fact that should have been disclosed." Sage v. Broad. Publ'ns, Inc., 997 F. Supp. 49, 52 (D.D.C. 1998) (internal citation omitted). "[The] materiality requirement is met if the matter at issue is 'of importance to a reasonable person in making a decision about a particular matter or transaction.'" U.S. v. Philip Morris USA Inc., 566 F.3d 1095, 1122 (D.C. Cir. 1996) (internal citation omitted).

Furthermore, a person who "is not a party to the transaction into which the complainant is induced" may also be charged with fraud, "particularly where such third person profits from the fraud and retains the benefits thereof." 37 Am. Jur. 2d Fraud and Deceit § 304 (2010). In other words, "[a] transaction is not purged of fraud by showing that it was brought about by a third person." Id.; accord Abrams v. Roseth Corp., 292 N.Y.S. 445, 446 (N.Y. App. Div. 1937) (holding that when third-party defendants "joined with the defendants . . . in said fraud and deprived the plaintiff of his commissions [and] kept and received the benefits of the services rendered by the plaintiff[, the third-party defendants are] participants with the defendant[s] . . . in

the alleged acts of fraud.").

Finally, Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake.  Fed. R. Civ. P. 9(b).  Another member of this Court in <u>In re U.S. Office Products Security Litigation</u>, articulated the Rule 9(b) standard as follows:

> Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters <u>such as</u> the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. (emphasis added)  In other words, Rule 9(b) requires that the pleader provide the who, what, when, where, and how with respect to the circumstances of the fraud. That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct.  Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked.  Finally, [c]onclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b).

326 F. Supp. 2d 68, 73-74 (D.D.C. 2004) (internal citations omitted); <u>Bamba v. Resource Bank</u>, 568 F. Supp. 2d 32, 34 (D.D.C. 2008) ( "One [who] plead[s] fraud must allege … facts as will reveal the existence of . . . the . . . elements of fraud.  Facts which will enable the court to draw an inference of fraud must be alleged, and [conclusory] allegations . . . on the part of the pleader as to the existence of fraud are insufficient.") (internal citations omitted).  Upon review of the plaintiff's complaint, the Court finds that the plaintiff's fraud claim satisfies the requisite pleading standard.

The plaintiff sufficiently alleges that Bonino and the defendant made two false representations in carrying out their scheme.  First, the plaintiff posits that Bonino falsely represented to the plaintiff that "all monies he obtained for the sale of Cascina wine[s] in the United States would be would be remitted to Cascina," Am. Compl. ¶ 13; <u>see also</u> <u>id.</u> ¶¶ 17, 20, when Bonino was instead "causing and directing defendant, Roberto Donna and the wine

importer . . . to make payments to him [rather than to the plaintiff]," id. ¶ 21, which Bonino deposited "into [his] Bank of America account . . . and thus converted them to his own use, id. ¶ 30." Second, the plaintiff alleges that Bonino and the defendant told him that "all wines sold to [the defendant] were to be used at Galileo, only, and not at [Trattoria]," id. ¶ 24, when the defendant was instead "divert[ing] some of the wine[s] to [Trattoria] and . . . not utiliz[ing them] at Galileo," id. ¶ 50. Although the plaintiff does not assert that Donna was the person who made the false representations to the plaintiff on the occasions just mentioned, the plaintiff does allege that the defendant became aware of Bonino's false representations and took advantage of them to his benefit, with knowledge of the circumstances. Id. ¶¶ 22, 42. The complaint also provides either the exact or approximate dates of the activities that support its fraud claim, id. ¶¶ 10, 12, 14, 18, 19, 20, 22, 25, 28, 32, along with the approximate value of the wines it exported, which are the subject of this lawsuit. Id. ¶¶ 10, 11, 19, 39, 40. Additionally, the complaint identifies various banking transactions between the defendant, Bonino, and Vini. Id. ¶¶ 25, 26, 27, 28, 30, 44, 45. Finally, the complaint asserts that a longstanding professional relationship existed between Bonino and Donna, specifically that Calita's principle place of business is listed as the Galileo restaurant. Id. ¶ 7. Accordingly, accepting the plaintiff's allegations as true and because a third party who profited from a transaction in which he knew the plaintiff was induced through false representations can be held liable for the underlying fraud, Abrams, 292 N.Y.S. at 446, the plaintiff has satisfied the first element necessary to assert a claim of fraud with the requisite degree of particularity.

The materiality element has also been sufficiently pled because it is alleged that the false representations induced the plaintiff to continue conducting business with Bonino and the

defendant. Am. Compl. ¶¶ 37, 49, 51-52. If the plaintiff had known that Bonino was selling the plaintiff's wines for less than the market price to the defendant and that Bonino was not remitting all of the money from the sales to the plaintiff, the plaintiff would have certainly terminated Bonino's employment, and in fact, the plaintiff terminated Bonino when the false representations came to light. Id. ¶ 32. Therefore, because a reasonable jury could find that the false representations affected the plaintiff's decision to retain Bonino as an employee, the false representations were material. See Philip Morris USA Inc., 566 F.3d at 1122-23 (holding that the risks involved with cigarette smoking were material because "each [risk] concern[ed] direct and significant consequences of smoking" and as such "[was] an important consideration for a reasonable person").

The third element is also be satisfied because the complaint asserts that Bonino and the defendant knew that their representations to the plaintiff were false. Id. ¶¶ 15, 20-21, 49-50. In addition, the fourth element of the claim is met by the plaintiff's allegation that Bonino and the defendant intended their false representations to deceive the plaintiff because their access to the plaintiffs's wines was necessary to continue their scheme. Id. ¶¶ 22, 36. Lastly, the fact that the plaintiff relied upon these false representations to its detriment is evident, given that from September 1, 2005 until September 27, 2006, the plaintiff continued to employ Bonino, which enabled him to supply Donna with the plaintiff's wines at below market prices. Id. ¶¶ 12-31. This reliance resulted in the plaintiff supplying wines valued at $415,666.80 to the defendant without receiving full remittance in return. Id. ¶ 11. Therefore, because the allegations in the complaint satisfy all of the elements of a claim for fraud, the Court must deny the defendant's motion to dismiss this count of the complaint.

B.	The Plaintiff's Conversion Claim

Defendant Donna seeks dismissal of the plaintiff's conversion claim on several grounds. First, he posits that the plaintiff is seeking to enforce an obligation to pay a debt and "the use of a conversion claim to accomplish this recovery is [in]appropriate." Def.'s Mem. at 9-10. Donna also argues that since the wines were lawfully obtained, the claim for conversion must be dismissed because the plaintiff does not allege that a demand was made for the allegedly converted property in order to show adverse possession. Id. at 10. Third, he maintains that any lawsuit for conversion against him in his personal capacity is improper because there has been no allegation by the plaintiff that there was an agreement between him and the plaintiff in his personal capacity. Id.; Def.'s Reply at 5. Moreover, the defendant advances the notion that since the wine importer was the entity that imported and sold the wines to him, that it possessed title to the wines when he acquired them, and therefore, the plaintiff had no property interest in the wines at the time of his acquisition, only a contractual right to be paid for the wines by the importer. Def.'s Reply at 5 n.3. Donna further argues that the conversion claim should be dismissed because the plaintiff does not sufficiently identify what property Donna is exercising dominion over. Def.'s Mem. at 10; Def.'s Reply at 5. Finally, he posits that "if [he] resold the wine[s], he cannot be liable for conversion." Def.'s Mem. at 10; Def.'s Reply at 5. Donna contends that for all of these reasons, the plaintiff has failed to state a claim for fraud.

The plaintiff responds that its Second Amended Complaint sufficiently alleges that Donna unlawfully "converted [the p]laintiff's property . . . for his own use[]." Pl.'s Opp'n at 6. It contends that the money in question is not a debt but rather a specifically identified sum of money, representing the aggregate value of the wines that was fraudulently withheld from the

plaintiff, and as such is recoverable under a theory of conversion.  Id. at 6-7.  Furthermore, the

plaintiff asserts that it is not required to make a demand for the return of the wines because

Donna's possession of the wines was unlawful in the first instance.  Id. at 6.  According to the

plaintiff, Donna and Bonino illegally obtained the wines by defrauding the plaintiff, id., and then

illegally obtained the money earned by selling the wines without compensating the plaintiff for

them, id.

"Under D.C. law, an action for conversion is recognized only when a defendant has

unlawfully exercised 'ownership, dominion or control over the personal property of another in

denial or repudiation of his rights thereto.'"  Kaempe v. Myers, 367 F.3d 958, 964 (D.C. Cir.

2004) (citing Shea v. Fridely, 123 A.2d 358, 361 (D.C. 1956)); Morgan v. Berry, 12 F. App'x. 1,

5 (D.C. Cir. 2000); Curaflex Health Servs., Inc. v. Bruni, 877 F. Supp. 30, 32 (D.D.C. 1995).

Therefore, "[w]here there has been no dispossession of property rights, there can be no action for

conversion."  Kaempe, 367 F.3d at 964. However, "[a] plaintiff need only aver title or ownership

in himself to support a cause of action for conversion."  R.A. Weaver & Assocs., Inc. v. Haas &

Haynie Corp., 663 F.2d 168, 173 n.43 (D.C. Cir. 1980).  It must be noted at this point that a

proprietary interest in property is different than a contractual right to payment for the property

and merely because a breach of contract has occurred does not preclude a plaintiff from pursuing

a conversion claim.  See id. at 173.  (holding that a contractor has both an ownership interest in

its drawings and  contractual right for payment for the production of the drawings).  But, where

the initial possession is lawful, a demand for return of the property is necessary to establish a

claim of conversion.  Furash & Co. v. McClave, 130 F. Supp. 2d 48, 58 (D.D.C 2001); Shulman

v. Voyou, L.L.C., 251 F. Supp. 2d 166, 170 (D.D.C. 2003) (quoting Shea v. Fridley, 123 A.2d

358, 361 (D.C. 1956) (noting that when the initial possession is lawful a demand for the return of the property is necessary to render possession unlawful and to demonstrate its adverse nature). Furthermore, "[m]oney can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money." Curaflex Health Servs., Inc. v. Bruni, 877 F. Supp. 30, 32 (D.D.C. 1995) (dismissing the plaintiff's claim of conversion because his right to possession or control of the funds was contingent on the defendant's instruction to the bank to transfer the funds, which the defendant never requested) (citing Scherer v. Laborers' Int'l Union of N. Am., 746 F. Supp. 73, 84 (N.D. Fla. 1988) (granting summary judgment on the plaintiff's conversion claim because she had no right to possession of money, but had at best, an unsecured lien on the property with no right to possession)). A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money. Id., see also Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1089 & n.13 (D.C. 2008) ("Failure by a contracting party to pay the contract price or debt . . . is not conversion but merely breach of contract."). The Court will assess below whether the plaintiff has satisfied these pleadings requirements.

1.     Wrongful Exercise of Ownership Over the Personal Property of Another

The plaintiff has alleged that Donna obtained its wines by the use of fraudulent misrepresentations. Am. Comp. ¶ 52. Because the plaintiff is alleging that the initial possession of the wines was unlawful, there is no requirement that a demand be made for the proceeds from the sale of the wines to successfully assert a conversion claim. Shea, 123 A.2d at 361 (intimating that if the initial possession of the property in dispute is unlawful, a demand is not necessary as the adverse nature of the possession would appear self evident). Further, as admitted by the defendant, there was no contractual relationship between him and the plaintiff.

Def.'s Mem. at 10.  On the one hand, the defendant argues that the plaintiff's conversion claim actually constitutes a contract dispute in disguise, while also arguing that he cannot be held liable for conversion because there was no contractual relationship between him and the plaintiff. Def.'s Reply at 4-5.  The defendant cannot have it both ways.  There being no contract between the parties, the Court does not see how the plaintiff is attempting to enforce an obligation to pay for the wines through utilization of a conversion claim.  Rather, the plaintiff has alleged that it is entitled to an identifiable sum of money represented by the proceeds acquired from the sale of its wines.  Pl.'s Opp'n at 6-7.  As the plaintiff points out, this money is not representative of a debt owed, but is instead a specific amount of money that the plaintiff alleges has been wrongfully retained by the defendant.  Id. at 7.  Therefore, because the plaintiff has pled facts sufficient to show that the proceeds acquired from selling its wines were unlawfully retained, and the funds in question represent an identifiable sum of money, the Court is satisfied that the plaintiff has sufficiently pled this element of his claim for conversion.

      2.    <u>Repudiation of the Owner's Rights</u>

In order to support a claim for conversion, the plaintiff must show that the defendant interfered with the plaintiff's control of the property "so seriously" that the defendant "may just[ifiably] be required to pay the [plaintiff for] the full value of [its wines]."  <u>Blanken v. Harris, Upham & Co.</u>, 359 A.2d 281, 283 (D.C. 1976) (quoting Restatement (Second) of Torts § 222(A)(1) (1965)).  In <u>R.A. Weaver</u>, 663 F.2d at 171-72, the defendants received a credit for architectural drawings that belonged to the plaintiffs and retained the benefit from the recipient of the credit.  The District  of Columbia Circuit upheld a jury verdict that awarded compensatory and punitive damages based on a finding that the defendant had converted the plaintiffs'

drawing.  Id. at 173.  The court found that selling the drawings and keeping the proceeds represented a denial and repudiation of the plaintiffs' rights to the drawings.  Id.  The current case presents circumstances similar to those in R.A. Weaver.  Specifically, the defendant is accused of fraudulently acquiring wines that belonged to the plaintiff and then failed to forward the proceeds from the sale of the wines to the plaintiff.  Pl.'s Opp'n at 6-7.  If true, these allegations would constitute interference with the plaintiff's right to the proceeds from the sale of its wines.  The plaintiff has therefore set forth allegations in the Second Amended Complaint that would allow a jury to infer that the defendant's control over the plaintiff's property—selling the wines and retaining the proceeds—seriously interfered with the plaintiff's rights to the proceeds acquired from the sale of the plaintiff's wines.  Additionally, the Court finds that the plaintiff has satisfied the pleading requirements for its conversion claim.

C.    The Plaintiff's Conspiracy Claim

        The defendant next challenges the plaintiff's conspiracy claim, arguing that "it is nothing more than [a] derivative of the fraud and conversion counts."  Def.'s Mem. at 11.  He further contends that "the allegations proffered in support of the conspiracy count are internally inconsistent because they allege that Donna personally obtained wine[s] from [the plaintiff] even though the agreement for the importation of the wine[s] was . . . between [the plaintiff] and its importer . . . not Donna."  Id.  Therefore, the defendant concludes that the conspiracy count must be dismissed because the plaintiff fails to allege that the defendant was the person that committed a wrongful act in furtherance of a common scheme, and thus has not properly "alleged [an] underlying tort(s)."  Id.  The plaintiff responds by arguing that the conspiracy and fraud claims necessarily support one another, opining that "[o]nce Mr. Donna enter[ed] into a

16

conspiratorial agreement with Bonino to defraud [the plaintiff], each conspirator be[came] liable for the acts of one another in furtherance of the conspiracy." Pl.'s Opp'n at 4. Specifically, the plaintiff alleges that Donna became a coconspirator when he "agree[d] to pay for Cascina's wine[s] from Bonino and direct[ed] his payments to Bonino in cash through hidden accounts," id., listing multiple occasions when Bonino and the defendant made false representations to the plaintiff, id. at 4-5.

In the District of Columbia, civil conspiracy consists of four elements: "'(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.'" Second Amendment Found. v. U.S. Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting Halberstam v. Welch, 705 F.2d 472, 476-81 (D.C. Cir. 1983)). See also Sturdza v. Gov't of the United Arab Emirates, 281 F.3d 1287, 1306 (D.C. Cir. 2002) ("In the District of Columbia, 'a cause of action for civil conspiracy must allege the formation and operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result.'") (quoting Higgs v. Higgs, 472 A.2d 875, 877 (D.C. 1984)). For the following reasons, the Court concludes that the plaintiff's conspiracy claim survives the defendant's motion to dismiss.

1.     An agreement between two or more persons

In order to show a conspiracy the plaintiff must first allege a "single plan, the essential nature and general scope of which [were] known to each person who is to be held responsible for its consequences." Hobson v. Wilson, 737 F.2d 1, 52 (D.C. Cir. 1984) (alteration in original)

(quoting Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979)).  However, while "[t]he conspirators 'must share the general conspiratorial objective, . . . they need not know all the details of the plan . . . or possess the same motives.'" Id. (quoting Hampton, 600 F.2d at 621). Even when a conspiracy claim against an alleged tortfeasor is dismissed, the actions of that individual may still be considered in assessing whether a conspiracy claim has been adequately pled.  See Dennis v. Sparks, 449 U.S. 24, 27 (1980) (explaining that although "the judicial immunity doctrine required dismissal of the § 1983 action against the judge who issued the challenged injunction . . . [, i]t does not follow . . . that the action against the private parties accused of conspiring with the judge must also be dismissed"); accord United States v. Dakins, 872 F.2d 1061, 1065 (D.C. Cir. 1989) (finding that even "if charges are dismissed against all other coconspirators . . . dismissal of charges against the remaining conspirator is not required") (quoting United States v. Sachs, 801 F.2d 839, 845 (6th Cir. 1986)).  Therefore, so long as the plaintiff has sufficiently alleged that a tort has been committed and satisfies all the elements of a conspiracy, the conspiracy claim survives even though the claim has been dismissed against the other alleged tortfeasor.  Dennis, 449 U.S. at 27.

Here, the plaintiff alleges that Bonino misrepresented to the plaintiff that he was a loyal and trustworthy employee while he was actually involved in a scheme to sell the plaintiff's wines to Donna for below market prices, deposit those funds into his personal account, and then fail to remit those funds to the plaintiff.  Because it has been alleged that Bonino committed several torts and that defendant Donna conspired with him in the commission of those acts, the plaintiff may maintain the conspiracy claim against Donna even though Bonino has been dismissed as a party in this action, so long as a conspiracy claim is otherwise adequately pled.

See Dennis, 449 U.S. at 27.  And the Court finds that this has been accomplished.  The plaintiff explicitly alleges an agreement between Bonino and Donna in the complaint.  Am. Compl. ¶ 22.  Specifically, he contends that Donna and Bonino agreed that Donna would pay Bonino a portion of the money owed to the plaintiff for the imported wines and in return Bonino would ensure that the plaintiff continued to provide the plaintiff's wines to Donna at a reduced price not authorized by the plaintiff.  Id. ¶¶ 22, 41-42.  The plaintiff amply supports these allegations by placing in the record a list of transfers of wines and their monetary value.  Id. ¶ 39. The plaintiff further alleges that Donna agreed to employ Bonino at Donna's restaurant Trattoria and give Bonino an ownership interest in that restaurant.  Id. at ¶ 23.  Accordingly, the plaintiff has satisfied the first element required to establish a civil conspiracy.

> 2.      Participation in an unlawful act, or a lawful act in an unlawful manner

"Under District of Columbia law, '[c]ivil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort.' A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied."  Nader v. Democratic Nat'l Comm., 567 F.3d 692, 697 (D.C. Cir. 2009) (internal quotations and citation omitted).  A conspiracy claim spreads liability for a successful tort claim to all parties to the conspiracy regardless of wether they actually committed the underlying tortious act.  Id.  See also Halberstam, 705 F.2d at 481 ("A conspirator need not participate actively in or benefit from the wrongful action in order to be [held] liable.").  Here, the plaintiff's conspiracy claim hinges on its claims for fraud and conversion.  And as concluded earlier in this Opinion, infra at 6-16, the plaintiff has successfully pled claims for fraud and conversion against Donna.  Thus, if the plaintiff successfully proves a claim of fraud or conversion against Bonino, Donna could also be

held liable for fraud and conversion based on the theory that he was Bonino's coconspirator. Nader, 567 F.3d at 697.

Regarding its claim of fraud, the plaintiff contends that Bonino represented to it that he would work as its United States sales representative and that any proceeds he obtained from the sale of its wines would be remitted to the plaintiff. Am. Compl. ¶ 13. The plaintiff contends that it relied on these representations in continuing to provide the wines to Bonino and Donna. Pl.'s Opp'n at 5. The plaintiff also alleges that Donna and Bonino knew the falsity of these statements when made. Id. Finally, the plaintiff asserts that it is currently owed $415,666.80 for the wines, which represents the value of the wines entrusted to Bonino and the injury it suffered as a result of the underlying fraudulent conduct. Am. Compl. ¶ 11.

In support of its conversion claim, the plaintiff asserts that Bonino and Donna wrongfully obtained possession of its wines through the use of fraudulent misrepresentations, id. ¶¶ 41-42, 52, sold the plaintiff's wines for substantially below market prices, id. ¶¶ 41-42, 55-56, and failed to forward the proceeds of the sale to the plaintiff, id. The plaintiff concludes that based on these actions, it is entitled to an identifiable sum of money that Bonino and Donna have improperly withheld. Pl.'s Opp'n at 6-7.

Given that the Court has determined that the plaintiff has successfully pled the existence of an agreement between Donna and Bonino, the plaintiff's fraud and conversion claims provide the underlying basis for its theory of conspiracy liability. Nader, 567 F.3d at 697.

3.    An injury caused by an unlawful overt act performed by one of the parties to the agreement

As previously stated, the Court finds that the plaintiff has successfully pled that it sustained an injury caused by the actions of one of the parties to the alleged agreement between

Donna and Bonino. Having asserted that it relied on misrepresentations by both the defendant and Bonino as the basis for continuing to provide its wines to Bonino, Am. Compl. ¶¶ 13, 17, 20-22, 24, 47, 49-52,54-57; Pl.'s Opp'n at 5, and having alleged that it is owed the balance of $415,666.80 for the wines that was the object of the underlying tortious conduct, Am. Compl. ¶¶ 11, 19, 39-40, 65, the injury requirement for a conspiracy claim has been properly pled.

    4.    <u>An overt act done pursuant to and in furtherance of the common scheme</u>

The Court finds that the plaintiff has alleged that an overt act was done by a member of the conspiracy in furtherance of the conspiracy. The plaintiff asserts allegations against the defendant and Bonino personally that go to the very heart of the conspiracy. Specifically, the plaintiff contends that the defendant and Bonino engaged in a conspiracy under which they would obtain the wines from the plaintiff without paying the full value. Am. Compl. ¶ 22. The plaintiff further alleges that through the use of numerous misrepresentations, the defendant and Mr. Bonino received its wines without remitting full payment for the wines. <u>Id.</u> at ¶¶ 13-17. These allegations are sufficient to satisfy the overt act component of a conspiracy claim. Moreover, even if these allegations were insufficient to show that an overt act was committed by the defendant personally, the overt act element of a conspiracy claim is satisfied whenever "an injury caused by an unlawful overt act [is] performed by <u>one</u> of the parties to the agreement . . . pursuant to and in furtherance of the common scheme." <u>Second Amendment Found.</u>, 274 F.3d at 524 (emphasis added). For example, in <u>Halberstam,</u> the District of Columbia Circuit held that a coconspirator was liable for the acts of his partner who murdered another man during a burglary even though the coconspirator did not plan or know about the "particular overt act" that his partner committed which caused the injury because "the purpose of the act was to advance the

overall object of the conspiracy." 705 F.2d at 487. Moreover, the court found that the overt act "was a reasonably foreseeable consequence of the scheme." Id. Therefore, because here the plaintiff contends that the defendant entered into an agreement with Bonino with knowledge that Bonino was making false representations to the plaintiff in furtherance of a scheme to defraud the plaintiff, the defendant would be liable for all qualifying overt acts committed by Bonino. Therefore, the overt act element of a conspiracy claim as to the defendant has been adequately pled by the plaintiff.[4]

D.     The Plaintiff's Unjust Enrichment Claim

Donna contends that the plaintiff's claim for unjust enrichment against him should be dismissed because its complaint fails to allege that "Donna, in his personal capacity, was a party to any agreement with [the] plaintiff in which [the] plaintiff . . . confer[red] a benefit on Donna." Def.'s Mem. at 12. In other words, Donna asserts that because the agreement here conferred a benefit to a third person, not Donna, the plaintiff cannot maintain an unjust enrichment claim against him. However, the plaintiff counters that it indirectly conferred a benefit on Donna by supplying him with its wines through Bonino, which Donna knowingly acquired for prices "below the market cost." Pl.'s Opp'n at 8. Therefore, the plaintiff asserts, Donna unjustly received the benefit of acquiring its wines without paying the full value for it at the plaintiff's expense.

_____

[4] The defendant's argument that he cannot be found liable for conspiracy because the plaintiff did not provide him with its wines in his personal capacity also rings hollow. The plaintiff has alleged sufficient facts to support a conspiracy claim against Donna in his personal capacity because of his alleged agreement with Bonino. Thus, even if Donna was acting as the agent of a business, he would still be liable for any torts that he personally committed. Oriental Trading Co. v. Firetti, 236 F.3d 938, 945 (8th Cir. 2001) (holding that defendants could be found personally liable even if they were acting as agents within the scope of their employment).

Unjust enrichment occurs when: (1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. New World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005). The District of Columbia recognizes unjust enrichment as a species of quasi contract doctrine that imposes, "in the absence of an actual contract, . . . a duty . . . upon one party to requite another in order to avoid the former's unjust enrichment [,] . . . [and therefore] to permit recovery by contractual remedy in cases where, in fact, there is no contract." 4934, Inc. v. D.C. Dep't of Employment Servs., 605 A.2d 50, 55 (D.C. 1992) ("From the beginning a quasi-contract has been openly acknowledged to be a [l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise . . . . It is . . . founded on considerations of justice and equity, and on [the] doctrine of unjust enrichment.").

The Court finds that the challenge to the plaintiff's unjust enrichment claim advanced by the defendant is baseless. The defendant mistakenly asserts that because the actual agreement concerning the importation of the plaintiff's wines was with a third party and conferred no benefit to him, he cannot be held liable to the plaintiff on an unjust enrichment theory. His position is flawed due to the essence of the unjust enrichment doctrine, which operates from the premise that an actual contract is lacking, but nonetheless provides an avenue for relief to avert an injustice. 4934, Inc., 605 A.2d at 56 (holding that an employee was unjustly enriched by receiving double indemnifications for his injuries and he was therefore ordered to relinquish one of the payments because it was unfair and unjust to allow him to retain both). Thus, although the

23

plaintiff's complaint does not allege the existence of an agreement between Donna and the plaintiff, that does not defeat the plaintiff's claim that Donna was unjustly enriched at the plaintiff's expense. The Court therefore finds that the plaintiff's complaint sufficiently provides the defendant with adequate notice of the claim in dispute, and adequately alleges facts in support of its claim that Donna knowingly, unjustly, and indirectly acquired a financial benefit from the sale of the plaintiff's wines for which the plaintiff has not been reimbursed. Am. Compl. ¶¶ 22, 65. Accordingly, accepting as accurate the factual allegations in the complaint, as the Court must at the pleading stage, <u>Kowal</u>, 16 F.3d at 1276, the plaintiff's claim of unjust enrichment survives the defendant's 12(b)(6) motion to dismiss.

E.      <u>The Plaintiff's Request for an Accounting</u>

        The plaintiff has requested an accounting to disclose what wines the defendant and Bonino obtained from the plaintiff, what wines they sold to third parties, and what funds they received from the proceeds of such sales. Am. Compl. ¶¶ 72-73. Donna argues that due to the absence of a contract or fiduciary relationship between him and the plaintiff, there is no justification to require he provide an accounting to the plaintiff. Def.'s Mem. at 13. Notably, the plaintiff has failed to respond to the defendant's argument. Accordingly, the Court will not explore the plaintiff's request for an accounting due to the plaintiff's failure—in its opposition—to address the defendant's arguments challenging the plaintiff's request for an accounting. In accordance with prevailing case law in this Circuit and this Court's Local Civil Rule 7.1(b), "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal…" (<u>Fox v. Am. Airlines, Inc.</u>, No. 02-CV-2069 (RMU), 2003 WL

21854800, at *2 (D.D.C. Aug. 5, 2003) (citations omitted). The Court opts to invoke this authority and therefore the plaintiff's claim for an accounting is dismissed.

F.    Punitive Damages

In response to the plaintiff's request for punitive damages based on its claims of fraud, conversion, and conspiracy, the defendant argues that the allegations in the complaint do not rise to the level required to merit an award of punitive damages and that the claim should be dismissed. Def.'s Mem. at 13. The plaintiff counters that the Court can infer from the facts alleged in the complaint that the defendant committed fraud and conversion with actual malice in willful disregard of the plaintiff's rights. Pl.'s Opp'n at 9.

The awarding of punitive damages depends on whether the plaintiff can show "by clear and convincing evidence that the tort [(or torts)] committed by the defendant was aggravated by egregious conduct and a state of mind that justifies punitive damages." Johnathan Woodner Co. v. Breeden, 665 A.2d 929, 938 (D.C. 1995). Since the plaintiff alleges sufficient facts to survive a motion to dismiss for both its fraud and conversion claims, which are intentional torts, the claim for punitive damages will not be dismissed, Butera v. District of Columbia, 235 F.3d 637, 657 (D.C. Cir. 2001) ("In the District of Columbia, with rare exceptions, punitive damages [against individuals] are available . . . for intentional torts.") (internal citations and quotation marks omitted), due to the nature of the allegations levied against the defendant. Feltman v. Sarbov, 366 A.2d 137, 141 (D.C. 1976) ("[An award of punitive damages] is proper only when the tort is aggravated by evil motive, actual malice, deliberate violence or oppression.") (internal citations and quotation marks omitted). Specifically, the plaintiff contends that Donna acquired its wines from Bonino with the full knowledge that the plaintiff would not be equitably

compensated. Am. Compl. ¶ 36. Moreover, the plaintiff further asserts that the defendant made false statements to the plaintiff for the purpose of obtaining the wines from the plaintiff. Id. at ¶¶ 49-52. The Court is satisfied that these allegations, if proven true, could support a finding by a jury that the defendant's conduct was sufficiently egregious and committed with the requisite scienter to warrant a punitive damages award.[5]

## IV. Conclusion

For the foregoing reasons, the defendant's Rule 12(b)(6) motion to dismiss to is denied with respects to Counts I, II, III of the complaint and the plaintiff's demand for punitive damages. However, the defendant's motion to dismiss is granted with respect to Count IV of the complaint.

**SO ORDERED.[6]**


REGGIE B. WALTON
United States District Judge

---

[5] If this matter ultimately proceeds to trial, the Court will evaluate at the conclusion of the presentation of all the evidence whether the proof merits the jury being permitted to consider an award of punitive damages.

[6] An Amended Order is being issued contemporaneously with this Memorandum Opinion.